**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Kyle D.,[1]

Plaintiff,

v.

Frank Bisignano,
Acting Commissioner of Social Security,

Defendant.

Case No. 25-cv-2781 (SGE)

**ORDER**

---

This matter is before the Court and under its jurisdiction pursuant to 42 U.S.C. § 405(g). On appeal, Plaintiff Kyle D. seeks judicial review of the final decision of the Commissioner of Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Both parties consented to the disposition of the present case by the undersigned Magistrate Judge under 28 U.S.C. § 636(c). Both Ms. D and the Commissioner have fully briefed their positions, and this matter is now ripe for review. (Dkts. 13, 20.) For the reasons below, the Court grants Ms. D's request for relief and denies the Commissioner's request for relief.

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Thus, when the Court refers to Plaintiff by her name, only her first name and last initial are provided.

## BACKGROUND

Ms. D applied for DIB under Title II and SSI under Title XVI on April 10, 2023, alleging a disability onset date of April 10, 2023. (Admin. R. at 26.) Ms. D's claims were initially denied on July 6, 2023, and upon reconsideration on October 6, 2023. (*Id.*) Ms. D then requested that an ALJ review the denials. (*Id.*) On May 7, 2024, the ALJ held an administrative hearing at which Ms. D, accompanied by counsel, and an independent vocational expert ("VE") testified. (*Id.*; *id.* at 42-72.) The ALJ issued a decision on May 31, 2024, denying Ms. D's request for disability benefits. (*Id.* at 26-36.)

In reaching his decision, the ALJ followed the five-step sequential analysis process laid out in 20 C.F.R. §§ 404.1520(a), 416.920(a).[2] At step one the ALJ determined that Ms. D had not engaged in substantial gainful activity since April 10, 2023, the alleged disability onset date. (Admin. R. at 29.) At step two, the ALJ found that Ms. D had the following severe impairments: mood disorder, anxiety disorder, and gender dysphoria. (*Id.*) At step three, the ALJ determined that Ms. D did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment under

---

[2] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of at least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes that a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(i–v).

appendix 1 to subpart P of part 404. (*Id.* at 30-31.) The ALJ then made the following residual functional capacity ("RFC") determination:

> I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can carry out routine, repetitive, and 3-4 step tasks with adequate persistence and pace. The claimant can engage in superficial contact with others, such as taking instructions, relaying information, and transferring materials. She can adapt to the stresses of a routine repetitive or a 3-4 step work setting.

(*Id.* at 31.) After determining Ms. D's RFC, the ALJ found at step four that Ms. D was unable to perform any of her past relevant work as actually or generally performed. (*Id.* at 34.)

At step five, the ALJ found that other jobs existed in significant numbers in the national economy that Ms. D could perform. (*Id.* at 35.) Relying on the testimony from the VE, the ALJ found that Ms. D could perform the job requirements of "store laborer," of which there are 392,000 jobs available nationally; "laundry worker," of which there are 134,000 jobs nationally; and "janitor," of which there are 1,744,000 jobs nationally. (*Id.*) Because the ALJ determined that Ms. D could perform jobs that exist in significant numbers in the national economy, he concluded that she was not disabled. (*Id.* at 35-36.)

Ms. D sought review of the ALJ's decision by the Appeals Council, which was denied on March 17, 2025. (*Id.* at 6-9.) Ms. D then filed this action challenging the ALJ's decision. (Dkt. 1.)

## STANDARD OF REVIEW

Following a final decision from the Commissioner, the claimant may elect to seek judicial review of the determination. 42 U.S.C. § 405(g). Under this review, the District

Court is limited to a determination of "whether the ALJ's decision complies with the relevant legal standards and is supported by substantial evidence in the record as a whole." *Lucas v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). The ALJ must build a logical bridge between the RFC and the evidence. Social Security Ruling ("SSR") 96-8p.

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th 2001)). Essentially, the ALJ's decision should not be disturbed just because the Court might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The decision of the ALJ to deny benefits will not be reversed by the Court "so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

## ANALYSIS

Ms. D makes one challenge to the ALJ's decision: that the ALJ's RFC does not properly account for her social interaction limitations because he inexplicably omitted the "brief" and "infrequent" limitations recommended in medical opinions that the ALJ found persuasive. Ms. D therefore asks this Court to remand for further proceedings. The

Commissioner counters that the RFC is supported by substantial evidence and asks the Court to affirm the ALJ's decision.

**I. ALJ Not Required to Adopt Opined Limitations Verbatim in RFC**

Ms. D contends that by failing to include the terms "brief" and "infrequent" in the RFC's determination that she can "engage in superficial contact with others," the ALJ failed to account for all of the limitations within the opinions the ALJ found persuasive, resulting in an incomplete RFC. She specifically argues that the ALJ failed to explain why he departed from the medical opinions he found persuasive by omitting "brief" and "infrequent" in the determination of her limitations.

An ALJ is "free to accept some, but not all, of a medical opinion" and "is not required to 'explicitly reconcile every conflicting shred of medical evidence.'" *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)); *Nash*, 907 F.3d at 1091 (explaining that an ALJ need not "mechanically list and reject every possible limitation") (quoting *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)). Nor is an ALJ "required to adopt the exact limitations set in the opinions [he] found persuasive." *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023) (per curiam).

Here, the ALJ evaluated the opinions from two State Agency psychologists, Dr. Cremerius and Dr. Boyd. Dr. Cremerius opined that Ms. D "would be limited to occasional brief and superficial contact with co-workers and supervisors; no responsibilities for serving the public directly." (Admin. R. at 86.) Although the ALJ found Dr. Cremerius's

opinion to be partially persuasive, he did not disagree with Dr. Cremerius's determination as to Ms. D's social interaction limitations. (*Id.* at 33.)

Dr. Boyd more fully opined that Ms. D's ability to "cope with co-workers would be reduced but adequate for brief and superficial contact" and that her ability to "handle public contact would be reduced but adequate to handle brief, infrequent and superficial contact." (*Id.* at 96, 104.) The ALJ found Dr. Boyd's opinion to be persuasive and "well supported by medically acceptable clinical findings and laboratory diagnostic techniques as well as applicable imaging studies." (*Id.* at 34.) He also found the opinion to be "consistent with the medical evidence of record both before and after medical consultant review." (*Id.*) The ALJ did not rely on other medical opinions in determining Ms. D's RFC. (*See id.* at 31-34.)

It is well established that the ALJ did not have to adopt the medical opinions word-for-word and did not err merely by leaving "brief" and "infrequent" out of the RFC. *See Jennifer L. v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-1822 (KMM/TNL), 2024 WL 4120375, (D. Minn. June 27, 2024), *R&R adopted*, 2024 WL 4003021, at *2 (D. Minn. Aug. 30, 2024) ("An RFC determination is not erroneous simply because the ALJ does not adopt, word-for-word, the limitations set forth in a medical opinion that the ALJ finds persuasive . . . [r]ather the focus is on whether substantial evidence supports the RFC.") (citing *Wyatt*, 2023 WL 6629761, at *1). That said, Ms. D's contention regarding the lack of explanation from the ALJ on why he excluded "brief" and "infrequent" from the RFC assessment has merit.

## II. ALJ Required to Explain Decision

"[I]f an ALJ fails to explain their evaluation of the persuasiveness of the record's prior administrative medical findings, that is a legal error subject to de novo review." *Jolene J.-D. v. O'Malley*, No. 23-cv-2297 (JMB/DLM), 2024 WL 3488001, at *7 (D. Minn. July 1, 2024), *R&R adopted*, 2024 WL 3470786 (D. Minn. July 19, 2024) (citing *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022).

"While the ALJ does not have to incorporate every limitation recommended by medical evaluators, the decisions about which limitations to include or exclude must be well-supported by evidence and clearly explained." *Jason L. v. O'Malley*, No. 23-cv-184 (JWB/JFD), 2024 WL 965240, at *2 (D. Minn. Mar. 6, 2024); *Jolene J.-D.,* 2024 WL 3488001, at *7 ("The Court understands the law to be that both must be present: an ALJ's decision must be substantially supported by the evidence in the record, and, where the ALJ's decision does not adopt a part of the medical findings, they must explain why, such that their explanation is reviewable."); *but see Jennifer L.*, 2024 WL 4003021, at *5 (finding that "remand is not warranted for further explanation of the ALJ's decision not to specifically include a superficial-interaction limitation") and *W. v. Kijakazi*, No. 22-cv-2612 (PAM/TNL), 2023 WL 2540566 at *2-3 (D. Minn. Mar. 16, 2023) (acknowledging plaintiff's argument that the ALJ failed to explain but concluding that ALJ's decision was supported by substantial evidence), *aff'd sub nom. Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761 (8th Cir. Oct. 12, 2023).

Here, the ALJ did not explain why he failed to include the words "brief" and "infrequent" in his RFC, despite finding the psychologists' opinions using these words to be persuasive. Indeed, these words are distinct from "superficial" and could meaningfully affect the analysis performed by the VE and, thus, the ALJ's RFC determination. *See Charlita N. v. O'Malley*, No. 23-CV-1283 (NEB/DTS), 2024 WL 1667155, at *1 ("It is true that, in social security cases, 'there is a material difference between a superficial contact and an occasional contact limitation' . . . Occasional contact refers to the quantity of interactions, while superficial contact refers to the quality of interactions.") (quoting *Kenneth J.V. v. Kijakazi*, No. 22-cv-373 (KMM/DJF), 2023 WL 2394397, at *10 (D. Minn. Jan. 27, 2023), *R. & R. adopted*, 2023 WL 2388696 (D. Minn. Mar. 7, 2023)); *Tiffany B. v. Kijakazi*, No. 22-cv-1227 (ECT/DLM), 2023 WL 3958424, at *4 (D. Minn. May 22, 2023), *R. & R. adopted*, 2023 WL 3955348 (D. Minn. June 12, 2023) (explaining that "'brief' refers to the length of a particular interaction, and 'superficial' refers to the quality of the interaction; but 'occasional' refers to how often such interactions occur").

The Court finds that the ALJ erred in failing to adequately explain his omission of the psychological experts' findings that Ms. D be limited to "brief" and "superficial" interactions and substituting his own finding that Ms. D merely be limited to engaging in "superficial contact with others." (Admin. R. at 31.)

Without an explanation, the Court cannot determine "whether the ALJ intended to omit th[ese] limitation[s] (and if so, why), whether he improperly conflated these terms, or whether he meant to substitute a more vocationally relevant term but then neglected to

address the quality and duration of [Ms. D's] workplace interactions elsewhere in the Decision." *Nathan L.*, 2024 WL 3015139, at *5. The Court "should not be left 'to speculate on what basis the Commissioner . . . denied a claim.'" *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 872 (8th Cir. 2011).

**III. ALJ Error Was Not Harmless**

The Court next addresses whether the error was harmless. "A plaintiff bears the burden of demonstrating that an agency's error is harmful." *Tiffany B.*, 2023 WL 3958424, at *4 (citing *Christopher J. B. v. Kijakazi*, No. 20-cv-2631 (JFD), 2022 WL 2806374, at *7 (D. Minn. July 18, 2022)). "An error is harmless when the [plaintiff] fails to 'provide some indication that the ALJ would have decided differently if the error had not occurred.'" *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)).

The Commissioner contends that the error was harmless because the record as a whole supports the ALJ's determination. The Court is unpersuaded. Again, the exclusion of "brief" and "infrequent" could well have altered the analysis as to the jobs available to Ms. D given her limitations. And this alteration could have affected the ALJ's disability decision. The ALJ's omission of the potentially material limitations was not "clearly explained." *Jason L.*, 2024 WL 965240, at *2. As a result, the Court cannot determine whether the ALJ's omission of "brief" and "infrequent" was purposeful or supported by substantial evidence. The Court must therefore conclude that the ALJ's error was not harmless.

## CONCLUSION

Based on the foregoing, and on all the files, records, and proceedings herein**, IT IS HEREBY ORDERED** that:

1. Ms. D's request for relief (Dkt. 13) is **GRANTED**.

2. The Commissioner's request for relief (Dkt. 20) is **DENIED**.

3. This matter is **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g) for further explanation as to why Ms. D.'s RFC should or should not include the limitations that she have "brief and superficial contact" with coworkers and "brief, infrequent and superficial contact" with the public.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 8, 2026

*s/ Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge